Ms. Emeline C. Acton Hillsborough County Attorney Post Office Box 1110 Tampa, Florida 33601
Dear Ms. Acton:
Your office has requested my opinion on substantially the following question:
May the county amend its charter to place a cap on the annual increase in the county's operating budget, with the provision that the cap may be waived by an affirmative vote of at least six of the seven members of the board of county commissioners?
In sum:
The county may not amend its charter to place a cap on the annual increase in the county's operating budget, even with a provision that the cap may be waived by an affirmative vote of at least six of the seven members of the board of county commissioners. Such an amendment would conflict with the provisions of Chapters 129 and200, Florida Statutes, which set forth the manner by which county budget and county millage rates must be established.
According to your letter, the Hillsborough County Charter Review Board convenes every five years to study county government and to place proposed changes to the charter on the next general election ballot. One such change under consideration is a proposed cap on increases in the county's operating budget. This cap would limit increases to no more than three percent or the annual inflation rate, whichever is lower. However, under this proposal, the cap could be waived by the affirmative vote of six members of the seven-member county commission. Sponsors envision this cap proposal as an effective way to hold down the cost of government by restricting the county commission's discretion when establishing a budget and setting the tax rate to fund it. You ask primarily whether the waiver provision would overcome legal problems encountered by similar caps enacted in other Florida counties in the past. I believe such a provision would not overcome those problems.
Chapter 129, Florida Statutes, establishes a budget system for control of the finances of boards of county commissioners of the counties in this state. The chapter imposes the responsibility to prepare, approve, adopt, and execute, as prescribed in Chapter 129, an annual budget on the board of county commissioners for such funds as may be required by law or by sound financial practices and generally accepted accounting principles.[1] This budget controls the levy of taxes and the expenditure of money for all county purposes during the ensuing fiscal year.
Chapter 200, Florida Statutes, prescribes the procedures for the adoption of a millage rate for the levy of taxes by the county. Pursuant to section 200.001(1)(a), Florida Statutes, the general county millage "shall be that nonvoted millage rate set by thegoverning body of the county."[2] (e.s.) Thus, under state law, the county commission must set the millage rate each year for the general county millage.
As noted in your letter, the courts of this state have previously struck down attempts by a county to impose a tax cap as inconsistent with the general laws providing for the establishment of a county budget and imposition of ad valorem taxes contained in Chapters 129 and 200, Florida Statutes.
For example, in Board of County Commissioners of Marion County v.McKeever,[3] the Fifth District Court of Appeal concluded that a county ordinance imposing a millage cap on ad valorem taxes for a period of up to ten years unconstitutionally conflicted with the statutory scheme set forth in Chapters 129 and 200, Florida Statutes, regarding the formation of county budgets and the determination of ad valorem tax millages. The court acknowledged the broad powers of self-government granted to counties under Article VIII, section 1, Florida Constitution, and section 125.01, Florida Statutes, but recognized that such powers could not be exercised in a manner inconsistent with state law. While the county in question in McKeever was a noncharter county, the principle that a county cannot take action inconsistent with general law is equally applicable to charter counties.[4]
The court noted that Chapter 129, Florida Statutes, establishes a budget system for county government and mandates that the board of county commissioners prepare, adopt and execute an annual budget for such funds as may be required by law or by sound financial practices and generally accepted accounting principles. As noted above, this budget controls "the levy of taxes and the expenditure of money for all county purposes during the ensuing fiscal year."[5] Chapter 200, Florida Statutes, entitled "Determination of Millage," imposes on the county commission the responsibility to determine the amount to be raised for all county purposes and the rates to be levied for each fund.[6] The McKeever court concluded that a cap impermissibly conflicted with the scheme established in Chapters 129 and 200 requiring the county commission to make such determinations.
In reaching this conclusion, the McKeever court relied on the Supreme Court of Florida's decision in Board of CountyCommissioners of Dade County v. Wilson.[7] In that decision, the Supreme Court held that a proposed ordinance to set the millage rate through an initiative petition process was unconstitutional because it conflicted with section 200.191 (now section200.001),[8] Florida Statutes, which provided the exclusive manner for setting countywide millage rates.
In Charlotte County Board of County Commissioners v. Taylor,[9]
the Second District Court of Appeal struck down as unconstitutional a tax cap amendment to the county charter setting a revenue cap on revenues received from ad valorem taxes. The court concluded that the amendment was inconsistent with general laws that required the county commission, not electors, to establish a budget and levy ad valorem taxes based upon certain statutory criteria. The court stated:
"Chapter 129 establishes a budget system for each county and sets forth how it shall be prepared, approved, and adopted. The budget controls the levy of taxes and the expenditure of money for all county purposes. § 129.01, Fla. Stat. (1991). Chapter 200 provides for the determination and levy of tax millage. Section200.001 authorizes several categories of countywide millage rates. Section 200.001(1)(a), Florida Statutes (1991), establishes a category of general county millage and states that this millage rate shall be set by the governing body of the county. The supreme court has held that these statutory provisions are the exclusive manner by which countywide millage rates are to be set. Board of County Comm'rs of Dade County v. Wilson, 386 So.2d 556 (Fla. 1980).
* * *
[T]he tax millage in Charlotte County must be determined, pursuant to chapters 129 and 200, by the Board of County Commissioners of Charlotte County. The electors have informed the appellant that they do not want taxes raised unnecessarily. If the voters are not satisfied with the commissioners' actions in this regard, they have a remedy through the ballot box at the next popular election."[10]
As you can see, Florida courts consistently have struck down local provisions that seek to limit a county commission's discretion in setting an annual budget and millage rate. However, you ask whether a proposal that would permit the budget cap to be overridden by an affirmative vote of six of the seven county commissioners is sufficient to overcome the objections raised in these court decisions.[11]
The cases discussed above recognize that the Legislature has specified the manner in which county budgets are to be established and provided the exclusive manner by which countywide millage rates are to be set. Nothing in Chapter 129, Florida Statutes, regarding establishment of a budget, or in Chapter 200, Florida Statutes, regarding the establishment of a millage rate, provides for a cap on the budget that may be overridden by a super-majority vote of county commissioners. To impose such a cap would appear to be contrary to the scheme established by the Legislature in Chapters 129 and 200, Florida Statutes, which places the discretion and decision-making authority in the board of county commissioners. As the court stated in Charlotte County Board ofCounty Commissioners v. Taylor,[12] "[i]f the voters are not satisfied with the commissioners' actions in this regard, they have a remedy through the ballot box at the next popular election."
Accordingly, in light of the above, I am of the opinion that the county may not amend its charter to place a cap on the annual increase in the county's operating budget, even with a provision that the cap may be waived by an affirmative vote of at least six of the seven members of the board of county commissioners, since such an amendment would conflict with the provisions of Chapters 129 and 200, Florida Statutes, which set forth the manner for the adoption of a county budget and county millage rates.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] Section 129.01(1), Fla. Stat. And see, s. 129.03, Fla. Stat.
[2] See, s. 200.001(1)(b)-(d), Fla. Stat, setting forth the other three categories of the county millage:
"(b) County debt service millage, which shall be that millage rate necessary to raise taxes for debt service as authorized by a vote of the electors pursuant to s. 12, Art. VII of the State Constitution.
(c) County voted millage, which shall be that millage rate set by the governing body as authorized by vote of the electors pursuant to s. 9(b), Art. VII of the State Constitution.
(d) County dependent special district millage, as provided in subsection (5)."
And see, Art. VII, s. 12, Fla. Const. (authorizes local bonds payable from ad valorem taxation and maturing more than 12 months after issuance to finance or refinance capital projects authorized by law when approved by vote of the electors); Art. VII, s. 9(b), Fla. Const. (10-mill cap on ad valorem taxes, except for taxes levied for the payment of bonds and taxes levied for periods not longer than two years when authorized by vote of the electors, or county furnishing municipal services which may, to the extent authorized by law, levy additional taxes within the limits fixed for municipal purposes).
[3] 436 So.2d 299 (Fla. 5th DCA 1983), pet. for rev. den.,446 So.2d 99 (Fla. 1984).
[4] See, Art. VIII, s. 1(g), Fla. Const., stating that charter counties "shall have all powers of local self-government not inconsistent with general law[.]" And see, State v. SarasotaCounty, 549 So.2d 659 (Fla. 1989).
[5] Section 129.01(1), Fla. Stat.
[6] Section 200.011, Fla. Stat.
[7] 386 So.2d 556 (Fla. 1980).
[8] Chapter 82-154, Laws of Florida, amended and transferred s. 200.191 to s. 200.001, Fla. Stat.
[9] 650 So.2d 146 (Fla. 2d DCA 1995).
[10] Id. at 149.
[11] See, s. 4.02 of the Hillsborough County Charter providing that the board of county commissioners shall consist of seven commissioners.
[12] 650 So.2d at 149.